Keith Winston WATTERS, Appellee,

v.

### WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Appellant.

**Brenda Blocker, Third–Party Defendant–Appellee.**

No. 01–7092.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 7, 2002.

Decided July 12, 2002.

Rehearing En Banc Denied Aug. 6, 2002.

Vincent A. Jankoski argued the cause and filed the briefs for appellant. With him on the briefs were Cheryl C. Burke, Robert J. Kniaz, and Gerard J. Stief.

Nathaniel H. Speights argued the cause for appellee Keith Winston Watters.

Thomas W. Beimers filed the brief for third-party defendant-appellee Brenda Blocker.

Before: TATEL and GARLAND, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

Keith Watters, an attorney, brought suit against the Washington Metropolitan Area Transit Authority (WMATA) for failing to honor an attorney's lien on the proceeds of a settlement between WMATA and Watters' former client. We hold that WMATA's sovereign immunity bars Watters' lawsuit.

## I

Approximately ten years ago, Watters represented Brenda Blocker in a personal injury action against WMATA in the District of Columbia. Under the retainer agreement signed by Blocker, Watters was entitled to 33.3% of any recovery obtained in the case. After three and a half years of investigation and settlement negotiations, Blocker, apparently dissatisfied with the $55,000 compromise then under discussion between Watters and WMATA, discharged Watters. That same day, February 19, 1992, Blocker retained Bonita Rudd as her new attorney. On February 26, Watters sent WMATA a letter asserting an attorney's lien, in the amount of one-third of $55,000, on any recovery Blocker might obtain from the Authority. WMATA did not respond. Rudd settled Blocker's case for $60,000 on April 3, 1992,

and WMATA, disregarding Watters' purported lien, paid the full amount to Blocker and Rudd.

Watters brought the instant suit against WMATA for breach of contract and "breach of duty to enforce equitable lien." Compl. at 5. The district court dismissed Watters' breach of contract claim, but after a trial found WMATA liable for failing to honor Watters' lien. WMATA appeals from the judgment against it.[1]

## II

■ On appeal, WMATA contends that sovereign immunity precludes Watters from asserting or enforcing an attorney's lien against funds in its possession.[2] WMATA was created by an interstate compact entered into by the District of Columbia and the states of Maryland and Virginia.[3] As we have repeatedly held, the three signatories conferred each of their respective sovereign immunities, including the Eleventh Amendment immunity of the two states, upon the Authority.[4]

■ There is no question that the three signatories' sovereign immunity extends to suits for breach of attorney's liens. The Eleventh Amendment gives the two states immunity from suit in federal court, see *California v. Deep Sea Research, Inc.*, 523 U.S. 491, 501–02, 118 S.Ct. 1464, 140 L.Ed.2d 626 (1998), and judicial decisions in all three jurisdictions indicate that each has sovereign immunity against the imposition and enforcement of equitable liens (and against related devices like garnishment[5]) in their own courts as well.[6] Thus, unless WMATA's sovereign

---

1. WMATA also filed a third-party complaint against Blocker and Rudd, which the district court dismissed. WMATA appeals that dismissal as well, but our determination that WMATA is immune from liability to Watters moots the Authority's third-party claim.

2. WMATA did not raise this defense in its answer to Watters' complaint, but did raise it both in subsequent filings in the district court and in its opening brief in this court. Sovereign immunity is a jurisdictional issue that may be raised at any time during the course of litigation. *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1216 (D.C.Cir.1997).

3. On November 6, 1966, Congress consented to the WMATA Compact and enacted it for the District of Columbia. Washington Metro. Area Transit Auth. Compact, Pub.L. No. 89–774, 80 Stat. 1324 (1966). The Compact is codified at D.C.Code § 9–1107.01; Md.Code, Transp. § 10–204; and Va.Code §§ 56–529, –530.

4. See, e.g., *Jones v. Washington Metro. Area Transit Auth.*, 205 F.3d 428, 432 (D.C.Cir. 2000); *Beebe v. Washington Metro. Area Transit Auth.*, 129 F.3d 1283, 1287 (D.C.Cir.1997); *Sanders v. Washington Metro. Area Transit Auth.*, 819 F.2d 1151, 1154 (D.C.Cir.1987);

*Morris v. Washington Metro. Area Transit Auth.*, 781 F.2d 218, 224–25 (D.C.Cir.1986).

5. To "garnish" is to attach property (often wages) of a debtor that is in the possession of a third party in order to satisfy a debt. BLACK'S LAW DICTIONARY 689 (7th ed. 1999). See *Knight v. United States*, 982 F.2d 1573, 1578 (Fed.Cir.1993) (holding that "unless the United States has submitted itself to such state law, an attorney lien statute, like a state garnishment statute, has no force or effect against it and places no restraints on the government's payment of its obligations to another, including the payment of wages").

6. See *Grunley Constr. Co. v. District of Columbia*, 704 A.2d 288, 290 (D.C.1997) (garnishment); *Chewning v. District of Columbia*, 119 F.2d 459, 460 (D.C.Cir.1941) (garnishment); *Mayor of Baltimore v. Hooper*, 312 Md. 378, 539 A.2d 1130, 1132 (1988) (holding, "upon considerations of public policy" rather than sovereign immunity, that municipal corporations are not amenable to garnishment); *Kator, Scott, & Heller, PC v. Landsidle*, 35 Va. Cir. 107, 1994 WL 1031399, at *2 (Va. Cir. Ct.1994) (attorney's equitable claim against settlement fund); *Slaughter v. Winston*, 347 F.Supp. 1221, 1222–23 (E.D.Va.1972) (garnishment); *Phillips v. Rector of Univ. of Va.*,

immunity has been waived, the district court lacks jurisdiction to enter a judgment against the Authority. *See Burkhart v. Washington Metro. Area Transit Auth.,* 112 F.3d 1207, 1216 (D.C.Cir.1997) (noting that "sovereign immunity claims are jurisdictional").

■ We may find a waiver of sovereign immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Morris v. Washington Metro. Area Transit Auth.,* 781 F.2d 218, 221 (D.C.Cir.1986) (quoting *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (internal quotation marks and alteration omitted)); *see Lizzi v. Alexander,* 255 F.3d 128, 133 (4th Cir. 2001) (requiring "clear and unequivocal" waiver of WMATA's immunity). We find nothing to indicate such a waiver of WMATA's immunity against a suit for breach of duty to enforce an attorney's lien.

■ Although the WMATA Compact provides that WMATA may "[s]ue and be sued," Compact § 12(a), we have held that provision to extend only as far as the more specific (and partial) waiver of sovereign immunity contained in section 80 of the Compact. *Morris,* 781 F.2d at 221 n. 3; *accord Lizzi,* 255 F.3d at 133–34. Section 80 provides, in relevant part, as follows:

> The Authority shall be liable *for its contracts and for its torts* and those of its Directors, officers, employees and agent[s] committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function.

Compact § 80 (emphasis added). This section falls far short of a clear and unequivocal waiver of WMATA's immunity against attorney's charging liens. On its face, section 80 makes no reference to liens or their enforcement, nor is there any implication in its text that the Authority's funds may be made subject to equitable liens of any sort. In the District of Columbia,[7] an attorney's lien against funds held by a third party (like WMATA) is not a contract with, or tort of, the third party, but rather is a "qualified right of property which a creditor has in or over specific property of his debtor, as security for the debt." *Wolf v. Sherman,* 682 A.2d 194, 196–97 (internal quotation marks and alteration omitted).[8] The District does not

---

97 Va. 472, 34 S.E. 66 (1899) (mechanic's lien); *see also Department of the Army v. Blue Fox, Inc.,* 525 U.S. 255, 264, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999) (noting that "sovereign immunity bars creditors from attaching or garnishing funds in the Treasury, or enforcing liens against property owned by the United States" (citations omitted)); *Knight v. United States,* 982 F.2d 1573, 1578–79 (Fed. Cir.1993) (holding that sovereign immunity bars an attorney's lien against the United States).

7. We look to District of Columbia law to define the nature of Watters' claim, because the District is where the obligation (to pay attorney's fees) that generated the lien arose, and section 80 of the Compact provides that

WMATA is liable "in accordance with the law of the applicable signatory." *See Belton v. Washington Metro. Area Transit Auth.,* 20 F.3d 1197, 1199 n. 1 (D.C.Cir.1994).

8. *See also Blue Fox,* 525 U.S. at 262–63, 119 S.Ct. 687 ("An equitable lien ... merely grants a plaintiff 'a security interest in the property, which [the plaintiff] can then use to satisfy a money claim'" (quoting DAN B. DOBBS, LAW OF REMEDIES § 4.3(3), at 601 (2d ed. 1993))); BLACK'S LAW DICTIONARY 933 (7th ed. 1999) (defining "attorney's lien" as "[t]he right of an attorney ... to encumber money payable to the client ... until the attorney's fees have been properly determined and paid"). In *Grunley Construction Co.,* the District of Columbia Court of Appeals held that

have a statute that authorizes the imposition of an attorney's lien; such a lien is an equitable device that "arises when an attorney obtains a judgment [or settlement] for a client, and ... [is] merely a claim to ... equitable interference by the court to have that judgment [or settlement] held as security for ... the attorney's charges against the client." *Id.* at 197 (internal quotation marks and alteration omitted); *see Elam v. Monarch Life Ins. Co.*, 598 A.2d 1167, 1171 (D.C.1991).

Watters contended at oral argument that the *breach* of an attorney's lien constitutes a tort, and is thus covered by section 80's waiver of sovereign immunity for torts committed by the Authority.[9] But even if that contention were correct,[10] it begs the question of whether Watters could have placed a lien on WMATA's property in the first place. As we have noted above, the case law of the three signatories indicates that he could not have. *See supra* note 6 and accompanying text.

Our conclusion that WMATA is immune from the imposition or enforcement of an attorney's lien is bolstered by the same considerations that have led the courts to hold that public funds are generally immune from equitable liens and garnishments unless expressly permitted by statute. As the District of Columbia Court of Appeals declared in *Grunley Construction Co. v. District of Columbia*, "The policy behind the rule is manifest: the day-to-day fiscal integrity of local government could not be maintained if judgment creditors could seize funds that have been earmarked for other purposes." 704 A.2d 288, 290 (D.C.1997).[11] A lien of the kind Watters seeks to enforce would have the same impact on the public fisc.[12] Accordingly, we will not assume that the Compact's signatories intended to waive WMATA's immunity from the imposition or enforcement of such liens absent a clear and unequivocal expression of their intent to waive. Finding no such expression, we conclude that Watters' action is barred by

the District was immune from garnishment notwithstanding a statute that expressly waived sovereign immunity as a defense to a suit on a contract. 704 A.2d at 290.

**9.** Although Watters failed to file a brief in this court, we permitted his counsel to address the sovereign immunity issue at oral argument. *See* Fed. R.App. P. 31(c).

**10.** In *Blue Fox*, the Supreme Court suggested that a suit to enforce an equitable lien does not come within the Federal Tort Claims Act, which waives the federal government's immunity for "tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674; *see Blue Fox*, 525 U.S. at 260 n. 3, 119 S.Ct. 687. We have not found a District of Columbia case that discusses the proper classification of an attorney's claim against a third party for breach of an attorney's lien.

**11.** *See Buchanan v. Alexander*, 45 U.S. 20, 20, 4 How. 20, 11 L.Ed. 857 (1846) (noting that

"[t]he funds of the government are specifically appropriated to certain national objects, and if such appropriations may be diverted and defeated by state process or otherwise, the functions of the government may be suspended," and holding that the United States is therefore immune from writs of attachment against seamen's wages); *Hooper*, 539 A.2d at 1132 ("The policy of the law which prevents the laying of attachments in the hands of public officials seeks to prevent inconvenience and the disruption of public affairs." (internal quotation marks omitted)).

**12.** As the Supreme Court noted in *Hess v. Port Authority Trans–Hudson Corp.*, WMATA is "an enterprise constantly dependent on funds from the participating governments to meet its sizable operating deficits." 513 U.S. 30, 49, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994) (citing *Morris*, 781 F.2d at 225–27). The "'agency is so structured that, as a practical matter, if the agency is to survive, a judgment must expend itself against state treasuries.'" *Id.* (quoting *Morris*, 781 F.2d at 227).

WMATA's sovereign immunity.[13]

## III

For the foregoing reasons, we conclude that WMATA is shielded by sovereign immunity from Watters' suit for breach of duty to enforce an attorney's lien. As a consequence, the district court is without jurisdiction to grant him the recovery he seeks. We therefore vacate the judgment of the district court, and remand with instructions to dismiss this case for lack of jurisdiction.

*Vacated and remanded.*

13. This case was originally filed by Watters in the Superior Court of the District of Columbia, and then removed to federal court by WMATA. After we heard oral argument, the Supreme Court held, in *Lapides v. Board of Regents,* —— U.S. ——, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002), that when a state has waived sovereign immunity on a state-law claim in its own courts, it waives its Eleventh Amendment immunity by removing that claim to federal court. As the WMATA signatories have not waived immunity from attorney's liens in their own courts, the narrow holding of *Lapides* does not apply to this case. Even if it did, it would not be controlling because WMATA's immunity does not arise solely from the Eleventh Amendment. In any event, Watters has never argued that WMATA waived its immunity (Eleventh Amendment or otherwise) by removing this case to federal court. Unlike the defense of sovereign immunity, which is jurisdictional and may be raised at any time, the claim that WMATA waived its immunity is an argument that must be raised in a timely fashion. Cf. *Whelan v. Abell,* 48 F.3d 1247, 1250–51 (D.C.Cir.1995) (holding that appellant waived its claim that its opponent had waived the protections of the *Noerr-Pennington* doctrine by failing to assert the opponent's waiver); *Belton,* 20 F.3d at 1202 (holding that a party may waive its opponent's waiver of an argument by not raising it on appeal). And we see no reason to consider, sua sponte, an issue upon which neither this circuit nor the Supreme Court has yet opined.